STATE of Minnesota, Petitioner, Appellant,

v.

Duane Lowell PARSLEY, Respondent.

No. C3–93–2194.

Supreme Court of Minnesota.

April 14, 1995.

---

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St. Paul, and Daniel L. Geller, Red Lake County Atty., Red Lake Falls, for appellant.

John M. Stuart, State Public Defender, Evan W. Jones, Asst. Public Defender, Minneapolis, for respondent.

Considered and decided by the court en banc without oral argument.

## OPINION

STRINGER, Justice.

This appeal requires the court to determine whether the misdemeanor offense of intentionally pointing a gun at another person in violation of Minn.Stat. § 609.66, subd. 1(2) (1994), qualifies as a predicate misdemeanor for first-degree involuntary manslaughter, also known as "misdemeanor manslaughter," Minn.Stat. § 609.20(2) (1994). A Red Lake County jury convicted defendant, Duane Lowell Parsley, of first-degree involuntary manslaughter based on his violation of Minn.Stat. § 609.66. The court sentenced him to the presumptive term of 86 months, plus restitution. The court of appeals reversed, holding that intentionally pointing a gun at another cannot form the basis of a conviction for first-degree involuntary manslaughter. *State v. Parsley,* 521 N.W.2d 44 (Minn.App.1994). The court of appeals reduced defendant's conviction to second-degree culpably negligent manslaughter, Minn. Stat. § 609.205, and remanded for resentencing. *Id.* We reverse the decision of the court of appeals, reinstate the judgment of conviction, and affirm the sentence as imposed.

This case arises from a shooting that occurred at defendant's residence on January 9, 1993. The precise sequence of events leading to the victim's death is unclear, but the following facts were elicited at trial. Defendant purchased a small semi-automatic single action .22 caliber pistol about a month before the shooting. On the evening of January 9, a number of people ranging in age from 15 to 22, gathered at defendant's home in Oklee, a common weekend gathering place. A number of witnesses observed defendant handling the gun that evening. Defendant showed several people how to "dry fire" the gun, that is, fire the gun unloaded. During the course of the evening defendant apparently held the muzzle to the head of a friend, and witnesses observed defendant handling bullets and two clips for the gun. At some point witnesses observed defendant loading the gun.

By 11:30 p.m., approximately 11 people, including the victim, defendant's good friend Steve Klasen, remained in defendant's living room. Defendant began waving the gun around, telling people to leave. Shortly before the shooting defendant ejected a bullet. A guest kept this bullet from defendant, and defendant apparently said "I have more; you can have that one." He then proceeded to reload the gun.

Meanwhile, it appears defendant and Klasen, who was sitting on a couch across the room from defendant, bantered about whether defendant would actually shoot Klasen. Defendant apparently said "[m]ove it or lose it," and Klasen replied "go ahead and shoot me" or "you won't shoot." Defendant then pointed the gun at Klasen and pulled the trigger. The resulting shot killed Klasen. After the shooting, defendant was distraught and aided efforts to obtain help for Klasen.

At trial, defendant was convicted of first-degree involuntary manslaughter. A person is guilty of the felony offense of first-degree involuntary manslaughter if he or she:

> * * * causes the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense with such force and violence that death of or great bodily harm to any person was reasonably foreseeable, and murder in the

first or second degree was not committed thereby * * *.

Minn.Stat. § 609.20(2) (1994). The state relied on two underlying misdemeanors: (1) intentionally pointing a gun, whether loaded or unloaded, at or toward another person in violation of Minn.Stat. § 609.66, subd. 1(2); and (2) reckless handling of a gun in violation of Minn.Stat. § 609.66, subd. 1(1).

The court of appeals held that neither of these misdemeanor offenses may serve as the basis for a first-degree involuntary manslaughter conviction. *Parsley*, 521 N.W.2d at 46. According to the court of appeals, while both of the misdemeanor offenses may involve actions inherently dangerous to human life, neither offense involves the use of "force or violence" as required by Minn.Stat. § 609.20(2). *Id.*

Defendant's action in pointing the gun at Klasen was clearly a misdemeanor in violation of Minn.Stat. § 609.66, subd. 1(2). Defendant was neither justified by self-defense, nor did he have the requisite intent to constitute felony assault, a predicate offense for felony-murder. *See State v. Nunn*, 297 N.W.2d 752, 753–54 (Minn.1980); *State v. Kochevar*, 281 N.W.2d 680, 686 (Minn.1979).

█ However, the legislature excludes nonviolent misdemeanors as predicates for first-degree involuntary manslaughter. Minn.Stat. § 609.20(2). This court must decide whether, pursuant to Minn.Stat. § 609.20(2), the legislature intended to exclude the misdemeanor offense of intentionally pointing a firearm at another person in violation of Minn.Stat. § 606.66, subd. 1(2).

Under the court of appeals' approach, a misdemeanor may serve as the predicate for first-degree involuntary manslaughter only if the misdemeanor is committed with "force or violence." *Parsley*, 521 N.W.2d at 46. The legislature has indicated that it considers intentionally pointing a firearm at another to be a crime of violence. Minnesota Statute § 624.713 (1994) governs who is ineligible to possess a pistol. A person convicted of committing a "crime of violence" is ineligible to

possess a pistol unless 10 years have elapsed since the person's sentence or disposition expired, or since the person was restored to civil rights. Minn.Stat. § 624.713, subd. 1(b). The definition section of the statute, Minn. Stat. § 624.712, defines crimes of violence to include:

> * * * murder in the first, second, and third degrees, manslaughter in the first and second degrees, aiding suicide, aiding attempted suicide, felony violations of assault in the first, second, third, and fourth degrees, assaults motivated by bias under section 609.2231, subdivision 4, terroristic threats, use of drugs to injure or to facilitate crime, simple robbery, aggravated robbery, kidnapping, false imprisonment, criminal sexual conduct in the first, second, third, and fourth degrees, theft of a firearm, arson in the first and second degrees, riot, burglary in the first, second, third, and fourth degrees, reckless use of a gun or dangerous weapon, *intentionally pointing a gun at or towards a human being,* setting a spring gun, and unlawfully owning, possessing, or operating a machine gun or short-barreled shotgun, and an attempt to commit any of these offenses as each of those offenses is defined in Chapter 609.

> "Crime of violence" also means felony violations of chapter 152.

Minn.Stat. § 624.712, subd. 5 (1994) (emphasis added).

Consequently, we hold that intentionally pointing a gun at another individual in violation of Minn.Stat. § 609.66, subd. 1(2) is a crime of violence for purposes of forming the underlying misdemeanor for first-degree involuntary manslaughter.[1] The trial court permissibly instructed the jury on first-degree involuntary manslaughter and the evidence supports defendant's conviction for that offense. We need not address whether the misdemeanor offense of reckless handling or use of a gun in violation of Minn.Stat. § 609.66, subd. 1(1) may also serve as a predicate misdemeanor for first-degree involuntary manslaughter.

1. In *State v. Edwards,* 343 N.W.2d 269, 276, n. 2 (Minn.1984), this court at least implied that the misdemeanor offense of pointing a firearm at another could be the predicate for a misdemeanor manslaughter conviction.

In view of our holding, we must determine whether the trial court abused its discretion in refusing to depart downward durationally from the presumptive sentence. Without deciding whether or not an objective basis for a downward departure existed, we conclude that if the trial court had discretion to depart downward, it did not abuse its discretion by declining to do so.

Reversed, judgment of conviction reinstated, and sentence affirmed.

