**STATE of Minnesota, Respondent,**

v.

**Michael GORMAN, Appellant.**

**No. C6–94–1650.**

Court of Appeals of Minnesota.

May 16, 1995.

Review Granted in Part July 20, 1995.

Hubert H. Humphrey, III, Atty. Gen., Susan Gaertner, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Mark Essling, St. Paul, for appellant.

Considered and decided by CRIPPEN, P.J., and AMUNDSON and MINENKO,* JJ.

## OPINION

AMUNDSON, Judge.

Michael Gorman appeals from a judgment of conviction and sentence for second degree felony murder. We affirm.

## FACTS

Appellant Michael Gorman was convicted of second degree felony murder and first degree manslaughter in the death of Willie Thomas on October 16, 1993. Thomas died of brain injuries suffered when his head struck the floor of Born's Bar. Gorman, who had lost his wallet earlier in the evening and "frisked" a number of the bar patrons, including Thomas, admitted that he swung at Thomas and may have struck him with his fist.

Dr. Michael McGee, who performed an autopsy on Thomas, testified that Thomas suffered "contra coup" head injuries due to falling and striking his head. Dr. McGee testified that Thomas could have been knocked unconscious by a punch from a man of Gorman's size and muscularity, with the blow causing Thomas to fall and strike his head on the floor.

The trial testimony established that Thomas was in the back room shooting pool when

---

* Retired judge of the district court, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Gorman arrived at Born's Bar. At some point, Gorman went to the men's room and left his wallet there. Gorman could not find the wallet after he noticed it missing, and he began "frisking" the bar patrons. Gorman testified, as did other witnesses, that Thomas agreed to be frisked.

Blayne Buege testified that he saw Willie Thomas being confronted by the person who lost his wallet, and by several other men. Buege testified that the person who had lost his wallet punched Thomas in the side of the head "[i]n a split second," before Thomas could see what hit him. Buege testified that he saw Thomas' eyes roll back in his head as he fell.

The trial court ruled that the state could present *Spreigl* evidence of six prior assaults or disorderly conduct incidents. The court ruled inadmissible four other *Spreigl* incidents. Before ruling on each incident, the trial court made a finding that the state's case was weak:

> The parties have both admitted that the prosecution's case is weak. The eyewitnesses in this case were at Born's Bar. They had been drinking. Two out of the three didn't see the first punch. Mr. Buege was the only one who saw it and yet he was unable to identify the defendant other than to say that it was the person whose wallet was missing.

Several of the *Spreigl* incidents involved assaults by Gorman after he thought someone had stolen something from him. Some of the assaults also involved a blind punch, a "sucker" punch that the victim could not see coming. One of the *Spreigl* incidents had overt racial overtones. The prosecutor argued in closing argument that Gorman was a bigot who lacked any respect for blacks. Willie Thomas was black.

The trial court instructed the jury on the elements of second degree felony murder, with third degree assault as a predicate felony. The court instructed that Gorman did not have to intend to inflict any specific degree of bodily harm in order to be guilty of third degree assault. The court instructed the jury on the lesser included offense of misdemeanor manslaughter, with fifth degree assault as the underlying misdemeanor. The court denied Gorman's request for instructions on the lesser-included offenses of second and third degree assault and fifth degree misdemeanor assault.

The jury found Gorman guilty of both second degree felony murder and misdemeanor manslaughter. The court sentenced him to 450 months, a double upward departure, based on the career offender statute. The court noted that Gorman had five prior felony convictions and found that he had engaged in a pattern of criminal conduct. This appeal followed.

## ISSUES

1. Did the trial court abuse its discretion in instructing the jury?

2. Did the trial court clearly abuse its discretion in admitting *Spreigl* evidence?

3. Was the sentencing departure an abuse of discretion?

## ANALYSIS

### I. *Jury Instructions*

Gorman argues that the trial court abused its discretion in instructing the jury on the elements of second degree felony murder and in refusing to instruct on lesser-included offenses. Gorman argues that the court's instructions on second degree felony murder made it a "strict liability" offense on the facts of this case because he admitted throwing a punch at Thomas, and because the result was Thomas' death. Gorman also argues that the instruction improperly used the result of the assault to satisfy an element of the predicate offense. *See State v. Parsley*, 521 N.W.2d 44, 46 (Minn.App.1994) (misuse of a dangerous weapon was not proper predicate offense for misdemeanor manslaughter because it could not be committed with "force and violence" unless the resulting death were considered), *rev'd* 529 N.W.2d 675 (Minn.1995).

■ Refusal to give a requested jury instruction is within the trial court's discretion. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn. 1985).

The trial court's instructions on second degree felony murder did not make it a strict liability offense. The state still had to prove that Gorman intended to assault Thomas. *See generally Johnson v. State,* 421 N.W.2d 327, 331 (Minn.App.1988) (discussing intent necessary to commit first degree assault, and stating "intent is an essential element in assault"), *pet. for rev. denied* (Minn. May 4, 1988). The felony-murder doctrine merely relieved the state from proving that Gorman possessed a homicidal intent, as it does in every other felony murder prosecution. *See generally State v. Branson,* 487 N.W.2d 880, 881–82 (Minn.1992) (common law felony murder imputed malice where there was no specific intent to kill based on far less serious crimes).

Gorman argues that the trial court's instruction was erroneous under *Parsley. See* 521 N.W.2d at 46. We disagree. The supreme court reversed this court's opinion in *Parsley.*

Even if this court's *Parsley* analysis had not been reversed, however, any kind of an assault inflicting bodily harm is committed "with force." *See* Minn.Stat. § 609.02, subd. 10 (definition of "assault"); *see generally* Minn.Stat. § 609.19(2) (second degree felony murder must be in the course of committing a felony offense "with force or violence"). There is no other element required of the predicate felony.

Gorman argues, however, that because the predicate assault must be a felony-level assault it must be with at least an intent to inflict substantial bodily harm. *See* Minn. Stat. § 609.223, subd. 1 (definition of third degree assault). But felony assault has not been construed to require proof of intent to inflict a certain degree of bodily harm. *See State v. Mosley,* 414 N.W.2d 461, 465 (Minn. App.1987) (specific intent to inflict a certain degree of harm is not essential for first degree assault), *pet. for rev. denied* (Minn. Dec. 22, 1987).

The jury therefore did not have to consider the result of Gorman's assault— Thomas' death—to find that Gorman committed a felony-level assault. We also note that there was testimony that Thomas appeared to be unconscious even as he fell, and that Gorman's punch alone could have caused a concussion. "Substantial bodily harm" is defined, in part, to include "temporary but substantial loss or impairment of the function of any bodily member or organ." Minn.Stat. § 609.02, subd. 7a. A state of unconsciousness verging on shock has been held to satisfy the higher standard of "great bodily harm." *State v. Jones,* 266 N.W.2d 706, 710 (Minn.1978). If Thomas suffered a loss of consciousness, and a concussion, from the punch, then the jury could have found the predicate felony offense even without reference to Thomas' death.

Gorman also argues that the trial court should have instructed the jury, as requested, on the lesser-included offense of fifth degree assault.

The test for submission of a lesser-included offense instruction has two parts: (1) whether the lesser offense is a necessarily-included offense; and (2) whether the evidence would permit the jury rationally to acquit of the greater offense and convict on the lesser. *See State v. Patch,* 329 N.W.2d 833, 836 (Minn.1983). There is no dispute that misdemeanor assault is a lesser-included offense of the predicate felony assault, and therefore of the felony murder itself. But in order to acquit on one of the two greater offenses in this case (felony murder and misdemeanor manslaughter) and convict on misdemeanor assault, the jury would have to have ignored Thomas' death or found a problem with causation that not even the defense argued.

The jury was instructed on both second degree felony murder and first degree misdemeanor manslaughter. The predicate misdemeanor was fifth degree assault. The jury therefore had a choice as to what degree of assault it thought that Gorman committed. If the jury concluded that it was only a misdemeanor assault, it could have acquitted Gorman of felony murder and convicted him of misdemeanor manslaughter. The lesser-included instruction on misdemeanor manslaughter adequately presented Gorman's theory of the case. Thus, we conclude that the trial court did not abuse its discretion in

denying the requested instruction on fifth degree assault.

## II. *Spreigl Evidence*

Gorman argues that the trial court abused its discretion in allowing the state to present several *Spreigl* incidents, and in admitting hearsay evidence to prove one of the incidents.

■ *Spreigl* evidence may be admitted to establish "motive, intent, absence of mistake or accident, identity or common scheme or plan." *State v. Slowinski*, 450 N.W.2d 107, 113 (Minn.1990). The admission of *Spreigl* evidence rests within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *State v. DeWald*, 464 N.W.2d 500, 503 (Minn. 1991).

■ Gorman contends that the *Spreigl* evidence was improperly admitted to show bad character—that he was a racist and an assaultive bully. But *Spreigl* evidence may be admitted to show motive, even though motive is not an element of the offense. The state argued that Gorman was a racist and that this furnished part of the motivation for the assault. Although the state also argued the suspected wallet theft as a motive, there is no requirement that the state limit its theory of the case to a single motive.

■ *Spreigl* evidence is also admissible to show identity. *Slowinski*, 450 N.W.2d at 113. The trial court stated that both parties "admitted that the prosecution's case is weak." The *Spreigl* ruling was made before Gorman took the stand and admitted he threw a punch at Thomas. The testimony at that point generally showed a confused confrontation, with a number of people near Thomas. There was no unequivocal eyewitness testimony that it was Gorman who threw the first punch.

■ *Spreigl* evidence is admissible to show modus operandi as well. *Slowinski*, 450 N.W.2d at 113. The state argued that Gorman's modus operandi was to accuse people of theft, and then assault them. Two of the assaults involved theft allegations and were thus sufficiently similar to the Thomas assault to show modus operandi. *See generally DeWald*, 464 N.W.2d at 503 (supreme court has never required absolute similarity between *Spreigl* offense and charged offense).

■ Gorman argues that the trial court violated his constitutional right to confrontation by allowing one *Spreigl* incident to be established by a hearsay statement. But the Confrontation Clause is not violated by admission of evidence that falls within a "firmly-rooted" hearsay exception. *See, e.g., State v. Salazar*, 504 N.W.2d 774, 777 (Minn. 1993) (statements made for the purpose of medical diagnosis or treatment). The victim told police what happened immediately after she flagged down the squad car to report the assault. Thus, this statement was properly admitted as an excited utterance. *See* Minn. R.Evid. 803(2).

## III. *Upward Departure*

Gorman argues that the trial court abused its discretion in sentencing him to a double durational departure. The trial court relied on the career offender statute and the fact that the felony murder was committed with particular cruelty to support the departure.

The trial court may depart up to the statutory maximum when sentencing on a felony offense that carries a presumptive executed sentence if

> the judge finds and specifies on the record that the offender has more than four prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct.

Minn.Stat. § 609.152, subd. 3 (1992).

■ It is undisputed that Gorman has five prior felonies, and that his second degree felony murder conviction called for a presumptive executed sentence. Gorman argues, however, that his prior offenses do not establish a "pattern of criminal conduct."

Gorman has a 1984 conviction for receiving stolen property, a 1985 conviction for second degree burglary, and a 1986 conviction for third degree burglary. Although these convictions are not similar to the current offense, we conclude that the trial court did not abuse its discretion in departing upwards

under the career offender statute. The legislature broadened the career offender statute in 1992 by eliminating the requirement that the offender derive a "substantial portion" of his income from the pattern of criminal conduct. 1992 Minn.Laws ch. 571, art. 2, § 10. This court has held that if a defendant commits crimes on a regular basis, he may be sentenced under the "career offender" statute even though the offenses are not of a similar type. *See State v. Flemino*, 529 N.W.2d 501, 504 (Minn.App.1995).

Because we conclude that Gorman was properly sentenced under the career offender statute, we need not address the trial court's finding that the offense was committed with particular cruelty.

## DECISION
The trial court did not abuse its discretion in instructing the jury. The court did not clearly abuse its discretion in admitting *Spreigl* evidence. The upward durational departure in sentencing was not an abuse of discretion.

**Affirmed.**