**Michael GORMAN, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C2–00–618.**

Court of Appeals of Minnesota.

Dec. 19, 2000.

Deborah K. Ellis, St. Paul, MN, for appellant.

Mike Hatch, Attorney General and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, and HARTEN and ANDERSON, Judges.

## OPINION

KLAPHAKE, Judge

Michael Gorman appeals from the district court's summary denial of his petition for postconviction relief in which he asserts that he is entitled to a new trial on the grounds of newly discovered evidence and violation of discovery rules by the state. Because appellant has presented evidence that raises legitimate questions as to whether he is entitled to a new trial, we reverse and remand to allow the district court an opportunity to hold an evidentiary hearing and make findings to support the grant or denial of postconviction relief.

## FACTS

Appellant was charged with first-degree manslaughter and second-degree felony murder for the October 1993 death of a man in a St. Paul bar. At his 1994 trial, appellant testified and acknowledged that he threw a punch at the victim, but asserted that he was acting in self-defense. According to appellant's testimony, he believed that the victim, who was boasting that he had just spent 18 years in prison for a double murder, was threatening appellant with what appellant believed was a gun or other weapon. On direct appeal, this court affirmed the convictions and sentence. *State v. Gorman*, 532 N.W.2d 229 (Minn.App.1995). The supreme court accepted review of the sentencing issue only and affirmed appellant's 450–month sentence as a career offender. *State v. Gorman*, 546 N.W.2d 5 (Minn.1996).

During a subsequent civil action, appellant's civil attorney discovered that the victim, who had been referred to at appellant's criminal trial only as "Willie Thomas," was also known by another name, "Willie Dixon." After several attempts, an investigator hired by appellant's current attorney uncovered other evidence about "Willie Dixon," including two prior convictions in Missouri for murder and St. Paul police reports indicating that in the months immediately preceding his death, the police had arrested or cited Dixon for various crimes, including assault, possession of drugs, and driving under the influence. At least one of these reports referred to "Willie THOMAS, AKA Willie DIXON." The officer who prepared this report was one of the investigating officers in appellant's case and testified at appellant's Rasmussen hearing.

Other evidence discovered by the investigator included a facsimile sent by the St. Paul police department to the medical examiner's office several days after the victim's death, in which the department identified the victim as "Dixon, Willie Henry," alias "Thomas, Willie NMN," and requested his palm and finger prints. The investigator also discovered a memorandum from a Ramsey County probation officer to a Ramsey County District Court Judge less than two weeks after the victim's death, in which the officer notified the judge that Willie Dixon, whom the judge had placed on probation in September, "died on October 17th as a result of a bar fight in St. Paul" and that "this matter should be discharged and the file closed at this time."

On January 11, 2000, appellant filed this petition for postconviction relief, arguing that he is entitled to a new trial because (1) newly discovered evidence, which the state failed to disclose, regarding the victim's true identity, prior murder convictions, prior assaultive conduct, and prior contacts with St. Paul police, would have enhanced appellant's credibility at trial and supported his claim of self-defense; (2) the trial court judge should have removed herself for bias because she had authorized wire taps over a period of three years prior to this offense, in connection

with ongoing investigations of appellant's other activities; and (3) trial counsel was ineffective for failing to file a motion to remove the trial court judge, uncover the information regarding the victim's true identity, and call other available witnesses whose testimony supported appellant's self-defense claim.

In support of his petition, appellant submitted three affidavits, one from the investigator hired by appellant's current attorney, another from his attorney, and a third from his trial attorney, who has since died. With these affidavits, appellant submitted the documents discovered by the investigator, including the records of the victim's 1976 Missouri murder convictions and St. Paul police records.

The state filed an answer to the petition and submitted a memorandum in opposition, arguing that the court may summarily dismiss or deny the petition because appellant has failed to show conclusively that he is entitled to relief. The state submitted no additional documents or affidavits.

On February 10, 2000, the postconviction court summarily denied the petition, finding that appellant's "claims are without merit."

This appeal followed.

### ISSUE

Did the district court abuse its discretion by summarily denying appellant's petition without an evidentiary hearing or findings?

### ANALYSIS

■ Minn.Stat. § 590.01, subd. 1 (1998), allows a defendant to seek postconviction relief "to vacate and set aside the judgment * * * or grant a new trial * * * or make other disposition as may be appropriate." A defendant has the burden to show, by a fair preponderance of the evidence, facts warranting a new trial. Minn.

Stat. § 590.04, subd. 3 (1998). This court will not reverse a postconviction court's decision "absent an abuse of discretion" and will "consider only whether sufficient evidence supports the postconviction court's conclusions." *Woodruff v. State,* 608 N.W.2d 881, 884 (Minn.2000) (citations omitted).

■ An evidentiary hearing is required in a postconviction proceeding "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (1998). At such a hearing, "the petitioner must show that there are substantial facts in dispute and that his version of the events, if true," entitle him to relief. *Doan v. State,* 290 Minn. 105, 108–09, 186 N.W.2d 518, 520 (1971) (remanding for postconviction hearing on issue of voluntariness of confession). Although findings are not always necessary, particularly if the postconviction judge also presided over trial and if the record clearly and conclusively supports the denial of relief, the record should at least reflect that the court considered the merits of the petition. *See Scruggs v. State,* 484 N.W.2d 21, 25 (Minn. 1992).

■ Appellant has alleged that he is entitled to a new trial because the state failed to disclose material evidence about the victim that would have significantly enhanced appellant's credibility at trial and supported his claim of self-defense. Under the facts of this case, appellant's allegations may be analyzed either as a claim of newly discovered evidence or a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Because the ultimate standard of materiality applicable to a *Brady* violation should be more lenient to the defense than the standard applied to newly discovered evidence, we will discuss and analyze appellant's claims as a *Brady* violation.[1] *See*

---

1. To prevail on a claim for a new trial based on newly discovered evidence, a defendant must establish: (1) at the time of trial, the evidence was not within the defendant's or his attorney's knowledge; (2) the evidence could not have been discovered through the exercise of due diligence before trial; (3) the evidence is material; and (4) the granting of a

*United States v. Bagley,* 473 U.S. 667, 680–81, 105 S.Ct. 3375, 3382–83, 87 L.Ed.2d 481 (1985); *see also State v. Hunt,* 615 N.W.2d 294, 299 & n. 6 (Minn.2000) (noting inquiry under Minnesota Constitution allows for harmless error analysis for undisclosed evidence, "not granting a new trial where the evidence could not in any reasonable likelihood have affected the judgment of the jury").

In *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The state has an affirmative duty to disclose evidence that is favorable and material to the defense. *Id.* In Minnesota, this duty is embodied in Minn.R.Crim.P. 9.01, subd. 1(6) (prosecutor "shall disclose to defense counsel any material or information within the prosecuting attorney's possession and control that tends to negate or reduce the guilt of the accused as to the offense charged").

The obligation to disclose information favorable to the defense extends to members of the prosecution staff, as well as others participating in the investigation or evaluation of the case. Minn.R.Crim.P. 9.01, subd. 1(7) (requiring state to disclose "material and information in the possession or control of members of the prosecution staff and of any others who have participated in the investigation or evaluation of the case"); *State v. Williams,* 593 N.W.2d 227, 235 (Minn.1999) (whether prosecutors actually knew of evidence not dispositive for *Brady* purposes; individual prosecutors have duty to learn of any favorable evidence known to others acting on government's behalf, including the police), *cert. denied,* 528 U.S. 874, 120 S.Ct. 180, 145 L.Ed.2d 151 (1999).

■ Thus, a true *Brady* violation consists of three components: (1) the "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

■ In this case, appellant has unquestionably established the first two components. This evidence was favorable to appellant, to the extent that it would have bolstered his self-defense claim and his credibility. In addition, the authorities in Ramsey County, including the police, the medical examiner's office, and the probation department, clearly knew of the victim's other name and prior history. We therefore conclude that the prosecutor had a duty to disclose this evidence to the defense. *See Williams,* 593 N.W.2d at 235 (where police, including some of same investigators working on case, knew of victim's past acts of violence, prosecutors had duty to disclose).

■ The only issue is whether the failure to disclose this evidence prejudiced appellant and denied him a fair trial under *Brady.* This inquiry involves consideration of whether the evidence would have been admissible at trial and whether there is a "reasonable probability" that it would have made a difference in the result at trial. Although evidence of a victim's prior bad acts or bad character is generally inadmissible, an exception exists when a defendant claims self-defense. *See State*

new trial "probably" would produce a different result. *Dale v. State,* 535 N.W.2d 619, 622 (Minn.1995) (postconviction court did not abuse its discretion by denying petition, where newly discovered evidence was cumulative and merely provided further support for defendant's claim that victim used crack cocaine, which was presented at trial through

testimony of at least three defense witnesses and rejected by jury). We are convinced that appellant has satisfied the first three requirements. Thus, the only issue under a newly discovered evidence analysis would be whether a new trial "probably" would produce a different result.

*v. Bland,* 337 N.W.2d 378, 383 (Minn.1983) (evidence of victim's character admissible to show intent, knowledge, or plan, but not to show that victim acted in conformity with his bad character). Evidence of the victim's prior bad acts and character would have been admissible to prove appellant's state of mind at the time he took a swing at the victim, given appellant's claim that the victim was boasting that he had just been released from prison for a double murder and his claim that he thought the victim was reaching into his pocket for a weapon. Evidence that the victim had just been released from prison also would have been admissible to bolster appellant's credibility as to what the victim said to him that evening and would have made less convincing the prosecutor's statements that appellant had fabricated that part of his story. This evidence undisputedly would have been admissible in some form at trial, had defense counsel known of it.

■ Within the meaning of *Brady,* "favorable evidence is material * * * if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (quotation omitted). A different result is "reasonably probable" when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Id.* at 434, 115 S.Ct. at 1566 (quotation omitted).

■ Where evidence is merely "collateral and speculative," the state's failure to disclose it may not undermine our confidence in the outcome of a trial. *See Williams,* 593 N.W.2d at 235. The evidence here, which consisted of prison and police records, was not speculative. Nor does this evidence appear collateral to appellant's case: it was directly relevant to appellant's credibility and self-defense claim, and easily could have led the defense to discover other witnesses or evidence favorable to appellant. *See State v. Zeimet,* 310 N.W.2d 552, 553 (Minn.1981) (new trial necessary, where defendant con-

victed of third-degree murder for setting fire to house and killing two children, where prosecutor failed to disclose information obtained from children's grandmother regarding possible culpability and involvement of mother in children's deaths). Finally, this evidence might have changed appellant's decision to testify, thus limiting the prosecution's ability to cross-examine him and impeach his credibility. As this court noted on direct appeal, the state's case was "weak," and, up until the point that appellant testified, the testimony "generally showed a confused confrontation, with a number of people near [the victim and] no unequivocal eyewitness testimony that it was [appellant] who threw the first punch." *Gorman,* 532 N.W.2d at 234.

Because it appears "reasonably probable" that this evidence may have made a difference in the outcome of appellant's trial, appellant's right to a fair trial may have been violated. *See State v. Moore,* 493 N.W.2d 606, 609 (Minn.App.1992) (defendant entitled to new trial, where state commits prejudicial discovery violation by failing to inform defense of pretrial statement by victim that would have given defendant reason to abandon consent defense that he had decided to raise at trial), *review denied* (Minn. Feb. 12, 1993). Although appellant argues that we should reverse outright and grant him a new trial, we conclude that a remand is more appropriate to allow the district court judge, who was also the trial court judge in this case, an opportunity to hold an evidentiary hearing and determine whether appellant was prejudiced and denied a fair trial by the state's failure to disclose this evidence. *See Bagley,* 473 U.S. at 684, 105 S.Ct. at 3385 (remanding case to Court of Appeals to determine "whether there is a reasonable probability that, had the [evidence] been disclosed to the defense, the result of the trial would have been different").

■ Finally, we briefly address the other, alternative bases for relief cited by appellant in his postconviction petition. In one, he alleges that the trial court judge

was biased because she had been involved in authorizing wire taps against him. At his sentencing hearing, however, appellant acknowledged that he knew of the judge's involvement. Because this issue was known at the time of appellant's direct appeal and not raised, appellant is precluded from raising it in this postconviction proceeding. *See Case v. State,* 364 N.W.2d 797, 799 (Minn.1985) (citing *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)).

Another basis raised by appellant for postconviction relief is ineffective assistance of trial counsel. To establish an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's representations fell below an objective standard of reasonableness. *King v. State,* 562 N.W.2d 791, 795 (Minn.1997). Appellant criticizes his attorney for failing to seek the trial judge's removal and failing to call additional eyewitnesses to support his self-defense claim. These are generally matters of trial strategy, upon which this court will not pass judgment. *See Gustafson v. State,* 477 N.W.2d 709,

713 (Minn.1991). Appellant has failed to allege facts that, if proven true, would be sufficient to support his claim for ineffective assistance of counsel.

## DECISION

The petition, files, and record fail to prove conclusively that appellant is entitled to no relief on his claim that the prosecutor failed to disclose evidence that the victim was also known by another name, had a prior criminal record in another state, and had been involved in several other incidents with police in the months immediately preceding his death. We therefore reverse the district court's summary denial of appellant's petition for postconviction relief and remand for an evidentiary hearing on the issue of whether the prosecutor's failure to disclose this evidence denied appellant a fair trial.

**Reversed and remanded.**