*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1511**

State of Minnesota,
Respondent,

vs.

Andrew Russell Severtson,
Appellant.

**Filed November 28, 2016
Affirmed
Smith, Tracy M., Judge**

Olmsted County District Court
File No. 55-CR-13-6323

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Smith, Tracy M., Judge; and

Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**SMITH, TRACY M.**, Judge

Appellant Andrew Russell Severtson appeals from his conviction of first-degree criminal sexual conduct, arguing that (1) he is entitled to a new trial because the state failed to disclose a colposcopy video from the victim's medical examination and (2) the district court erred in denying his *Paradee* motion for in camera review of the victim's counseling and mental-health records for possible discovery of the records. Because the state did not violate its discovery obligations and because Severtson did not make a plausible showing that the counseling records sought would be material and favorable to his defense, we affirm.

## FACTS

In August 2013, eleven-year-old E.S. told her mother that her father, appellant Andrew Russell Severtson, had sexually assaulted her multiple times while she was living with him from 2010 to 2012. E.S.'s mother reported E.S.'s account to Benton County Human Services (BCHS) and the police. A Benton County child protection social worker interviewed E.S. at the St. Cloud Police Department. Based on that interview, BCHS referred E.S. to the Midwest Children's Resource Center (MCRC), a department of Children's Hospitals and Clinics of Minnesota that specializes in medical assessments of children who are suspected victims of abuse.

A nurse conducted the examination at MCRC while the social worker observed from another room via a live video feed. A video recording was made of the examination (exam-room video), in which E.S. and the nurse were mostly off screen but audible during the

2

genital examination. During the MCRC exam, the nurse examined E.S.'s genitals using a colposcope, which is a machine that illuminates, magnifies, and records video of the area during examination (colposcopy video). Dr. Carolyn Levitt viewed the colposcopy video and concluded that a healed "transection" or tear in E.S.'s hymen was consistent with the abuse E.S. described. The social worker gave the exam-room video and MCRC's written report to the police. MCRC's written report described the "VIDEOCOLPOSCOPIC GENIT[AL]/ANAL EXAM" and results. The colposcopy video remained in the medical records at MCRC and was not sent to law enforcement. Severtson was charged with first-degree criminal sexual conduct.

Before trial, Severtson made a *Paradee* motion asking the district court to review in camera any counseling and mental-health records of E.S.[1] Severtson's main defense theory was that E.S.'s mother had "coached" her to make false allegations, and he asserted that counseling would be the "one place where the child would be free of the influence of her mother and would be candid and honest." Without a subpoena, Severtson moved the district court to acquire E.S's counseling and mental-health records, if any, and review them in camera for evidence supporting his theory. The state argued that the request was a "fishing expedition" because Severtson had not identified any evidence that E.S. had been in counseling or that counseling records would show that E.S. had been coached. The state further said it had not found any reference to relevant mental-health records in the police

---

[1] A *Paradee* motion asks the court to review privileged material in camera to determine whether it is discoverable, balancing the defendant's interest in obtaining beneficial evidence with the privilege holder's interest in having her confidences kept. *State v. Paradee*, 403 N.W.2d 640, 642 (Minn. 1987).

3

reports or at E.S.'s medical clinics. The district court agreed with the state and denied the motion.

At a jury trial, E.S. testified that Severtson had assaulted her multiple times using multiple forms of penetration. On the second day of trial, the state called Dr. Levitt as a witness. Severtson moved to prevent Dr. Levitt from testifying about the colposcopy and the report on confrontation clause and hearsay grounds because the colposcopy was conducted by a nurse who was not testifying and Dr. Levitt based her conclusions on the colposcopy video rather than firsthand experience conducting the exam. Severtson also noted that the state had not disclosed the colposcopy video and claimed that he did not know there was a colposcopy video prior to trial. The state said it did not have the colposcopy video. The district court denied Severtson's motion and allowed Dr. Levitt to testify. Dr. Levitt testified that, based on the colposcopy video, she determined that E.S. had suffered vaginal "blunt force penetrating trauma." Dr. Levitt testified that it is "extremely rare" for a child E.S.'s age to have a tear like the one E.S. had in the absence of sexual abuse and that the kind of accidental injury that could cause a similar tear is "very, very uncommon."

On the third day of trial, after the state rested its case, defense counsel moved the district court to order the state to obtain the colposcopy video and disclose it to Severtson pursuant to Minn. R. Crim. P. 9.01 so he could request a continuance and hire an expert to interpret it and testify if it could be helpful to his defense. The district court denied the motion because Dr. Levitt had been listed as a witness, Severtson had the written report

4

from the MCRC exam that discussed the doctor's findings, and Severtson, "all along, if [he] wanted to, could have hired an expert," but did not do so.

Severtson did not testify or call any witnesses.

The jury found Severtson guilty of first-degree criminal sexual conduct. The district court sentenced Severtson to 270 months.

Severtson appeals.

**D E C I S I O N**

**I. The state did not violate its discovery obligations by failing to obtain the colposcopy video when Severtson asked for it on the last day of trial after the state rested its case.**

Severtson argues that he is entitled to a new trial because the state failed to disclose to him the colposcopy video from the MCRC examination of E.S., violating its discovery obligations under Minn. R. Crim. P. 9.01, subd. 1. Whether a discovery violation occurred is a legal issue that we review de novo. *State v. Palubicki*, 700 N.W.2d 476, 489 (Minn. 2005). This court generally will not grant a new trial to remedy a prosecutorial discovery violation unless the appellant shows that the discovery violation was prejudicial. *Id.* "A new trial is warranted when the State's discovery violations viewed in the light of the whole record, appear[] to be inexcusable and so serious and prejudicial that the defendant's right to a fair trial was denied." *State v. Miller*, 754 N.W.2d 686, 705 (Minn. 2008) (quotation omitted). The suppression of evidence is prejudicial if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Gorman v. State*, 619 N.W.2d 802, 807 (Minn. App. 2000) (quotation omitted), *review denied* (Minn. Feb. 21, 2001).

5

The Minnesota Rules of Criminal Procedure require the state to disclose to the defense "documents and tangible objects . . . that relate to the case," as well as the "results or reports of physical or mental examinations."  Minn. R. Crim. P. 9.01, subd. 1(3)(b), (d); *id.* at subd. 1(4)(a).  The prosecutor's disclosure obligations under subdivision 1 extend to objects and information possessed or controlled by the prosecution staff and by "others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported, to the prosecutor's office."  Minn. R. Crim. P., subd. 1a(1).

Severtson argues that the state violated its disclosure obligation by not obtaining from MCRC and disclosing the colposcopy video when Severtson requested it after the close of the state's case.  He asserts that the colposcopy video was material that was possessed by MCRC and that MCRC "reported [] to the prosecutor's office" with reference to this case.  *Id.*  The state disputes that MCRC reported to the prosecutor's office and therefore disagrees that the colposcopy video fell within the scope of Rule 9.01, subd. 1a.

We need not decide whether MCRC reported to the prosecutor's office for purposes of Rule 9.01.  The state argues, and we agree, that (1) even if MCRC did report to the prosecutor's office, in the circumstances of this case the state satisfied its disclosure obligations and (2) even if the state did not satisfy its obligations, Severtson has failed to prove he was prejudiced by the violation.

*Disclosure Obligations*

Under Rule 9.01, the prosecutor is required to allow the defendant to inspect and reproduce any information required to be disclosed.  Minn. R. Crim. P. 9.01, subd. 1a(2).

6

Here, the state apparently made available for discovery every discoverable item it actually possessed related to the MCRC exam. Dr. Levitt was on the witness list that the state filed and served on Severtson in October 2013, 18 months before the April 2015 trial. During discovery, which began in October 2013, the state disclosed to Severtson the written report from the MCRC investigation that was prepared by Dr. Levitt and the nurse who performed the colposcopy. The state also disclosed the exam-room video, which shows the nurse talking with E.S. about the reason for the exam and then moving out of frame to conduct the colposcopy, and shows Dr. Levitt entering the exam room after the colposcopy to conduct the rest of the physical exam. The only item Severtson claims to have been deprived of related to the MCRC exam is the colposcopy video of E.S.'s genitals, which the prosecution stated on the record it never possessed.

Severtson does not claim that the prosecutor had any obligation to obtain and produce the colposcopy video prior to his request, but he argues that the state violated rule 9.01 after his request. The state argues that it satisfied its disclosure obligations when it disclosed in pretrial discovery the medical report written by Dr. Levitt and the MCRC nurse that identified the videocolposcopy examination and its results. In the circumstances of this case, we agree with the state.

Severtson failed to request the colposcopy video until the final day of trial despite the fact that the state's pretrial disclosures were sufficient to put him on notice that a colposcopy video existed. The written report described how the genital examination was conducted, referring to it as a "videocolposcopic" exam using a "video colposcope." The report, which was written partially in the first person by the nurse and signed by Dr. Levitt,

7

indicated that the nurse conducted the colposcopy and that Dr. Levitt conducted the rest of the physical exam and made the final diagnosis of blunt force penetrating trauma. The exam-room video that was disclosed to Severtson shows the nurse and E.S. having a conversation alone in the exam room and then moving off screen to conduct the colposcopy, making it apparent that Dr. Levitt was not in the room during the genital exam. Because Dr. Levitt then signed the report drawing a conclusion about the cause of E.S.'s tear, an inference can be drawn that Dr. Levitt's conclusion must have been based on viewing the colposcopy video. The written report and video that were disclosed to Severtson in discovery made it clear that a colposcopy video was taken. Thus, Severtson could have asked for the video long before trial.

Instead, Severtson did not ask the state if a colposcopy video existed until voir dire at the earliest, did not raise his concerns about the video with the district court until the second day of trial while moving to exclude Dr. Levitt's testimony, and did not ask the state to obtain and produce the colposcopy video until the third and final day of trial, after the state had rested its case.[2] The state did not have the colposcopy video and noted that, by the time Severtson asked for it, the state no longer would have been able to obtain it without a court order or another medical records release because the release signed by E.S.'s mother had likely expired. Severtson did not have an expert witness at the time of his request, and the colposcopy video would have been of no use to him without an expert to analyze it. If the district court had granted Severtson's motion at that point, it would

---

[2] The first time Severtson asked the state to produce the colposcopy video was when he moved the district court to order the state to obtain and produce it.

8

have had to grant a continuance, delaying trial not only long enough for the state to seek the requisite release and obtain a copy of the video, but also long enough for Severtson to go through the process of finding an expert witness and preparing that witness for trial. This delay would have been undue in light of the fact that the written report and exam-room video that were disclosed to Severtson during discovery showed that a colposcopy video existed. We conclude that the state did not violate its disclosure obligations.

*Prejudice*

Even if the state violated its disclosure requirements, Severtson has failed to show prejudice entitling him to a new trial. *Miller*, 754 N.W.2d at 705. Severtson's argument that the nondisclosure was prejudicial focuses on the fact that the doctor's testimony about the colposcopy video and the conclusions she drew from it "were a major part of the State's case." The doctor testified in detail about what the video showed, concluded, based on the video, that E.S. had a healed tear in her hymen indicating "blunt force penetrating trauma" that could have been caused by the kind of abuse E.S. reported, and used her conclusions from the video to refute Severtson's theory that the tear may have been from an accidental injury. The state also discussed the colposcopy during its closing argument as key evidence corroborating E.S.'s testimony. Severtson asserts that if the colposcopy video had been disclosed, he could have determined that it would be beneficial to obtain his own expert witness to rebut Dr. Levitt's testimony, creating a reasonable probability that the verdict would have been different.

The state argues that Severtson has not shown prejudice because Dr. Levitt's conclusions were disclosed to Severtson long before trial in the written report, giving

9

Severtson the opportunity to call an expert to rebut those conclusions, and because Severtson does not claim that Dr. Levitt's conclusions were incorrect or explain how any other expert might have reached a different conclusion from viewing the video. We agree.

Severtson chose not to obtain an expert witness despite the fact that the state's disclosures related to the MCRC exam and Dr. Levitt gave him a fair opportunity to seek an expert to rebut the state's proposition that the tear corroborated E.S.'s allegations against Severtson. The criminal complaint filed on September 27, 2013, mentioned the MCRC report and stated that the report said E.S. had "a transection at the 7-8 o'clock position of her hymen which is consistent with blunt force penetrating trauma." Dr. Levitt was identified as a possible witness for the state a year and a half before trial. The written report that was disclosed during discovery described the colposcope and the examination process. The report disclosed the physical findings about the tear as well as the conclusion that the tear was consistent with blunt force penetrating trauma. It was clear from the report that the results of the colposcopy would be key evidence corroborating E.S.'s allegations. We therefore conclude that the state's disclosures gave Severtson sufficient opportunity to obtain an expert witness to rebut Dr. Levitt's conclusions, and the state's failure to obtain and disclose the colposcopy video when Severtson requested it on the last day of trial did not prejudice Severtson.

Moreover, Severtson has not provided any basis other than speculation to conclude that "there is a reasonable probability . . . that the outcome of the trial might have been different" had the colposcopy video been disclosed. *State v. Ramos*, 492 N.W.2d 557, 560

10

(Minn. App. 1992), *review denied* (Minn. Jan. 15, 1993). Without prejudice, a discovery violation does not warrant a new trial. *Miller*, 754 N.W.2d at 705.

## II. The district court did not err in denying Severtson's *Paradee* motion for in camera review of E.S.'s counseling and mental-health records.

Severtson argues that the district court erred in denying his *Paradee* motion for in camera review of E.S.'s counseling and mental-health records. District courts have wide discretion in discovery matters, and normally a discovery order will not be overturned absent an abuse of that discretion. *State v. Underdahl*, 767 N.W.2d 677, 684 (Minn. 2009). "To find an abuse of discretion, an appellate court must conclude that the district court erred by making findings unsupported by the evidence or by improperly applying the law." *Id.* (citing *Shetka v. Kueppers*, 454 N.W.2d 916, 921 (Minn. 1990)).

When a criminal defendant seeks discovery of privileged material and it is not clear whether the material is discoverable, the district court should examine the material in camera to determine if the defendant's rights should prevail over the privilege. *Paradee*, 403 N.W.2d at 642. To obtain in camera review, the defendant first must make a "plausible showing that the information sought would be both material and favorable to his defense." *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (quotation omitted).

Severtson argued that E.S.'s counseling and mental-health records might contain material and favorable evidence that E.S.'s mother convinced her to fabricate the allegations. At the time of the motion, neither Severtson nor the state claimed to know whether any counseling or mental-health records for E.S. existed. However, Severtson asked the district court to order the state to look for records of that kind and submit them

11

for in camera review because "[i]f there's one place where the child would be free of the influence of her mother and would be candid and honest, it should be in a counseling-type situation." The district court heard arguments from both parties and determined that Severtson failed to make the requisite showing, noting that it sounded like "a fishing expedition" and an "attack . . . on the mother more than anything else."

The district court's decision accords with precedent. In *State v. Evans*, the district court granted in camera review of records from a single medical examination of a witness, but the defendant argued that the court should have reviewed more of the witness's medical records for evidence of mental-health problems that would cast doubt on the witness's credibility. 756 N.W.2d 854, 873 (Minn. 2008). The supreme court in *Evans* rejected the defendant's arguments because he failed to make a showing that other records would contain information that would be material and favorable to his case; he "only offered argument and conjecture." *Id.* Similarly, in *Underdahl*, the supreme court concluded that the district court abused its discretion in finding Underdahl had shown that the source code to an alcohol-concentration-testing instrument was relevant to his guilt or innocence. 767 N.W.2d at 687. Underdahl argued that challenging the validity of the testing instrument was the only way to dispute the charges against him, but he "failed to demonstrate how the source code would help him do so" and "advanced no theories on how the source code could be related to his defense" or that it "was reasonably likely to contain information related to his case." *Id.* (quotation omitted). In contrast, the supreme court in *Underdahl* concluded that another defendant, Brunner, had met the requisite showing by submitting

nine exhibits including source-code definitions, written expert testimony that explained source codes, and an example of a breath-test analysis and its potential defects. *Id*. at 686.

Here, Severtson generally articulated a theory that E.S. might have counseling records that might contain information related to his case based on his suspicion that E.S.'s mother convinced her to lie and his assumption that a child is more likely to be honest in counseling than in any other situation. Severtson argues, without providing any factual support, that it is plausible that E.S. made statements in counseling that could help his case "by exposing bias, motive to fabricate, or evidence that she had been coached, which could have been used for impeachment." Like Evans and Underdahl, Severtson explained the logic behind his theory but did not offer any evidence to support his suspicion that the records existed or contained material information favorable to his case. Thus, we conclude that the district court did not abuse its discretion in denying Severtson's *Paradee* motion.

## III. Severtson's Pro Se Arguments Are Without Merit.

Severtson raised additional arguments in a pro se supplemental brief. First, Severtson challenges the credibility of E.S. and her mother as witnesses. "[D]etermining the credibility or reliability of a witness lies with the jury alone," and it is not within this court's role to reconsider witness credibility on appeal. *State v. Buckingham*, 772 N.W.2d 64, 71 (Minn. 2009). Additionally, Severtson offers as support for these arguments descriptions of prior events that are not supported by evidence in the record. "An appellate court may not base its decision on matters outside the record on appeal." *Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988).

Second, Severtson argued that his attorney improperly declined to call witnesses to testify on his behalf and therefore he received ineffective assistance of counsel. To prove ineffective assistance of counsel, "[t]he defendant must affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2068 (1984)). The decision of which witnesses to call is part of trial tactics and "lies within the proper discretion of trial counsel." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999). Severtson does not identify any factual issue material to this case to which his potential witnesses could have testified. Severtson has failed to show there is a reasonable probability that the result of the proceeding would have been different had his counsel called witnesses, so he has not met his burden to prove ineffective assistance of counsel. *Gates*, 398 N.W.2d at 561.

**Affirmed.**