*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1002**

State of Minnesota,
Appellant,

vs.

David Homer South,
Respondent.

**Filed December 1, 2014
Appeal dismissed
Larkin, Judge**

Crow Wing County District Court
File No. 18-CR-11-4277

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Rockwell J. Wells, Assistant County Attorney, Brainerd, Minnesota (for appellant)

Earl P. Gray, Amanda J. Montgomery, Earl Gray Defense, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Larkin, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

In this pretrial appeal, appellant State of Minnesota challenges the district court's ruling excluding evidence from respondent's trial. Because the state has not demonstrated that the district court's evidentiary ruling will have a critical impact on the outcome of the trial, we dismiss the appeal.

**FACTS**

The state charged respondent David Homer South with second-degree criminal sexual conduct against his three-year-old granddaughter, A.M.S. The complaint alleged that A.M.S. and her mother, A.M.M., lived with South and his wife. In October 2011, A.M.M. called for A.M.S., who was upstairs in the family's home with South, and received no response. A.M.M. walked upstairs and observed A.M.S. pulling up her pants as she came out of a room where she had been with South. A.M.M. asked A.M.S. why she was pulling up her pants, and A.M.S. responded that "'grandpa' was rubbing lotion on her 'pee pee.'" A.M.M. could smell lotion on A.M.S. Later, South provided a statement to the police, in which he denied rubbing lotion on A.M.S.'s vagina.

At the request of South's attorney, the state sent A.M.S.'s underwear to the Minnesota Bureau of Criminal Apprehension (BCA) for analysis. The BCA identified semen on A.M.S.'s underwear. The BCA conducted DNA testing on a sample taken from the underwear and concluded that neither South nor any of his paternally related male relatives could be excluded as the contributor of the DNA. The state did not amend its complaint after learning about the semen and DNA evidence.

Prior to trial, South moved the district court, under Minn. R. Evid. 403, for "an order prohibiting the state from presenting evidence of semen on A.M.S.['s] underwear which could have come from [South] or the father of A.M.S. who is the son of [South]." The district court heard oral arguments on the motion. South argued that "the semen that was found on the panties [could] either be [his] or his son's" and that "neither one [is] accused . . . of putting semen on the panties of this little girl." South argued that the "allegation in this case is that [he] rubbed cream on the girl in a room upstairs at his house" and that "[t]here's no mention by the little girl, by any of the witnesses or anybody else, that semen was ever involved in the incident upstairs." South further argued that "there's no way the state can now say . . . the cream was sperm because the mother smelled the cream." South argued that the presence of semen on the underwear therefore was a "confusing issue for the jury," "[i]t proves nothing," and "it's certainly prejudicial."

In response, the state pointed out that "initially law enforcement didn't send [A.M.S.'s clothing] in to be tested" and that "the items were sent in for testing . . . at defense counsel's request." The state argued that the "clothes were gathered, sent in, and . . . the jury should have the opportunity to hear what was found as a result of the examination of those clothes." The state also argued that "with respect to whether a little three-year-old specifically said that her grandfather ejaculated or that it was semen that he rubbed on her, she simply described it as a white cream" and "the results are what they are." The state further argued that South's argument "has to do with the weight of the evidence" and "[does not have] to do anything with admissibility."

South replied that A.M.S. had been interviewed by the police and specifically said that "no, he never did anything like that. He never had me touch his penis or she never even mentions that." South argued that "nobody knows how [the semen] got there. So what relevance does that have to a charge of sexual contact of white cream?"

The district court granted South's motion to exclude the evidence of semen on A.M.S.'s underwear. The district court issued a written order, explaining that "the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to [South]." The district court provided the following rationale:

> The court recognizes that there is a sexual intent component to the offense charged. Further, the court acknowledges the legitimacy of the scientific approach used to acquire this evidence. But, the fact that there is not a single allegation involving semen, the penis, or masturbation, combined with the fact that the semen could be that of [South] or [South's] son, makes the probative value of this evidence minimal. In contrast, there is a substantial danger that this evidence could confuse the jury and persuade by improper means.

> This case, as evidenced by the complaint, is about a man rubbing lotion on a child's genitals. There is no nexus between the evidence and the charges, and the evidence will be excluded under Minn. R. Evid. 403.

The state moved for reconsideration, arguing that the evidence would corroborate A.M.S.'s testimony at trial and that it was relevant to the issue of sexual or aggressive intent. The district court denied the state's motion, providing the following rationale:

> There's nothing in the allegations that involve semen, ejaculation or anything of that nature. There's no conduct claimed in the complaint . . . that would involve that. I understand that the intent of the law is sexual gratification, and that may or may not be the end result.

4

But it's also troubling that this excludes everybody but two people. And . . . there's no evidence or there's no allegation or indication or nexus between what is on the underwear and Mr. South.

And I do find when there's no nexus of that sort, nothing in the allegation, to just throw out semen which might be his or it might be his son's on the child's underwear in front of a jury to be . . . unduly prejudicial.

The state filed this pretrial appeal, challenging the district court's ruling.

**D E C I S I O N**

The state may appeal from "any pretrial order" so long as "the district court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." Minn. R. Crim. P. 28.04, subds. 1(1), 2(1). "[A] pretrial order will only be reversed if the state demonstrates clearly and unequivocally that the [district] court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Underdahl*, 767 N.W.2d 677, 681 (Minn. 2009) (quotation omitted). "The critical impact requirement has evolved into a threshold issue, so that in the absence of critical impact we will not review a pretrial order." *Id.* (quotations omitted).

Critical impact, the threshold question, is intended to be a demanding standard, but with some flexibility. The state can show critical impact when complying with an order significantly reduces the likelihood of a successful prosecution. The state does not have to show that conviction is impossible after the pretrial order—only that the prosecution's likelihood of success is seriously jeopardized.

*Id.* at 683 (quotations and citations omitted). "When examining critical impact, the state's admissible evidence will be viewed as a whole to determine what impact the

pretrial order will have on the prosecution's case." *Id*. The supreme court has stated that "[t]here are good reasons for strictly construing the rule granting the prosecution the right to appeal a pretrial order. The appeal occurs while the defendant is awaiting trial, presumed innocent, and possibly confined." *State v. Barrett*, 694 N.W.2d 783, 787 (Minn. 2005).

The state argues that its case "hinges primarily on the faded memories of a six-year-old child regarding a brief incident that occurred when she was three years old," and that evidence of the semen "tends to corroborate or substantiate A.M.S.'s allegations." The state further argues that "[t]he presence of semen in A.M.S.'s underwear is a far greater showing of sexual intent than lotion or white cream"; "[t]here is no way to explain the DNA analysis without referencing the semen found in A.M.S.'s underwear"; and the district court's ruling "creates an unfair advantage for [South]" because it "has taken away the ability of the jury to even consider that the . . . DNA profile may have come from the semen found in A.M.S.'s underwear."

Three circumstances influence our decision regarding whether the state has established critical impact. First, the district court's ruling indicates that the court excluded only "evidence of semen on A.M.S.'s underwear," and not all DNA evidence. Thus, in its critical-impact argument, the state includes the DNA results among its available evidence for trial. If the DNA results are available to the state, the state has physical evidence to corroborate A.M.S.'s testimony even if it cannot refer to the semen evidence.

Second, even if the district court were to exclude the DNA evidence, the state may be able to corroborate A.M.S.'s testimony with her prior statements.[1] The state can also present the corroborating testimony of A.M.M. who, according to the complaint, observed A.M.S. pulling up her pants as she came out of a room where she had been with South and smelled lotion on A.M.S.'s body.

Third, during oral argument in district court, the state indicated that it sent A.M.S.'s underwear to the BCA for scientific analysis only at defense counsel's request, suggesting that the state was prepared to go to trial without scientific evidence. Given that the state was willing to attempt to prove sexual intent without scientific evidence, we have a difficult time concluding that the critical-impact standard is met.

In conclusion, based on the state's burden to demonstrate critical impact and the supreme court's caution to "strictly constru[e] the rule granting the prosecution the right to appeal a pretrial order," *id.*, we conclude that the state has not made a threshold critical-impact showing. We therefore dismiss the appeal.

**Appeal dismissed.**

---

[1] The district court reserved rulings on the admission of "A.M.S.'s statement to her mother" and "A.M.S.'s recorded statement."