STATE OF MINNESOTA

IN SUPREME COURT

A23-0010

Court of Appeals                                          Hudson, C.J.
                                                  Took no part, Gaïtas, J.


State of Minnesota,

              Respondent,

vs.                                                   Filed: April 9, 2025
                                              Office of Appellate Courts
Christopher Lee Manska,

              Appellant.

_____

Keith Ellison, Attorney General, Lydia Villalva Lijó, Assistant Attorney General, Saint Paul, Minnesota; and

Jacob Fauchald, Itasca County Attorney, Todd S. Webb, Chief Assistant County Attorney, Grand Rapids, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Andrew J. Nelson, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

For discovery motions seeking non-confidential information, Minnesota Rule of Criminal Procedure 9.01, subdivision 2(3), requires a defendant to show only that the information sought "may relate to the guilt or innocence of the defendant" and does not incorporate a higher "material and favorable" standard.

1

Reversed and remanded.

O P I N I O N

HUDSON, Chief Justice.

This case concerns what showing a defendant must make under Minn. R. Crim. P. 9.01, subd. 2(3), for a district court to compel the State to disclose non-confidential information, and whether appellant Christopher Lee Manska made a sufficient showing to entitle him to the discovery he sought in his case.

Under Rule 9.01, a district court may require the prosecution to disclose any relevant information to the defendant, provided that the defendant shows that the information sought may relate to his guilt or innocence. In this case, Manska was charged with driving while impaired. He sought the audit trail of the arresting officer's squad car dash camera to challenge the authenticity of the video footage related to this charge. The district court concluded that Manska did not make an adequate showing to compel the State to disclose the audit trail. The court of appeals affirmed, concluding that Manska failed to show that the information sought would be "material and favorable" to his defense.

We conclude that the court of appeals applied the wrong standard, requiring Manska to make a showing higher than what is necessary under Rule 9.01. Because Rule 9.01 requires a defendant to show only that the information sought "may relate to the guilt or innocence of the defendant," we reverse and remand.

**FACTS**

On September 2, 2020, a Nashwauk police officer was on patrol in a marked squad car equipped with a dash camera when he observed a vehicle swerve twice over the fog

2

line.[1]  One or two minutes later, the officer turned on the emergency lights of his squad car, which automatically activated the vehicle's dash camera.  The officer stopped the vehicle, approached it, and identified the driver as Manska.  While speaking with Manska, the officer discovered that Manska's driver's license had been canceled by the commissioner of the Department of Public Safety as inimical to public safety.  The officer also observed signs of intoxication, including "bloodshot and glossy eyes, erratic movements, and profuse sweating."  The officer obtained a search warrant for a blood or urine sample, but Manska refused to submit to the test.  During a search of Manska's car, officers found a bag containing 14.11 grams of marijuana.  The State charged Manska with driving while impaired, Minn. Stat. § 169A.20, subd. 1(2) (2024); refusal to submit to a chemical test, Minn. Stat. § 169A.20, subd. 2(2) (2024); driving after cancellation, Minn. Stat. § 171.24, subd. 5 (2024); possession of marijuana in a motor vehicle, Minn. Stat. § 152.027, subd. 3 (2022); and unauthorized use of a motor vehicle, Minn. Stat. § 609.52, subd. 2(a)(17) (2024).

Manska filed a series of pretrial motions, most of which are not relevant to this appeal.  At issue in this appeal are Manska's motions seeking the dash camera audit trail, in which he claimed that the officer had tampered with the footage he received during discovery.[2]  Due to the court reporter's error, there are no transcripts of Manska's first two

---

[1]  The fog line is the solid white line painted on the right side of a roadway.  It separates the traffic lane from the shoulder.

[2]  The officer's squad car was equipped with a dash camera made by Axon.  Axon dash camera videos have an "audit trail," which, broadly speaking, shows events and changes related to the selected device, such as recording start or end times.  *See Device Audit Trail*

3

omnibus hearings. In a written order, the district court denied Manska's motion to compel discovery of the dash camera audit trail under Rule 9.01. The district court determined that Manska had "provided no evidence other than his assertion that the DVDs produced in discovery are not authentic" or were altered. The district court found that the exhibits Manska submitted, including correspondence with an engineer at the dash camera company, undercut Manska's claims because the engineer explained that the dash camera begins recording only when activated, and dash camera video footage cannot be changed, modified, or edited.[3] Based on this record, the district court found that Manska's claim that the footage had been altered was not credible. The district court concluded that the State had fulfilled its Rule 9.01 obligation by providing DVDs of the dash camera footage.

---

*Information*, myAXON, https://my.axon.com/s/article/Device-Audit-Trail-Information?language=en_US (last visited April 7, 2025) [opinion attachment]. This page of the Axon website was modified on February 28, 2025, but the relevant information remains the same. The parties dispute whether and when a video can be modified.

[3] The relevant text of the email Manska submitted to the court from the engineer at Axon, the dash camera company, is as follows:

> Axon cameras are designed to be tamper-proof. I am not sure if you are looking at body worn or in-vehicle video, but either way our system does not allow an officer to modify or delete video footage in any way. A user can only view and annotate details regarding a video, but they cannot change the content. Once uploaded to the server, Axon Evidence (evidence.com) will not allow the original to be modified or edited. It can be deleted, however the purpose of deletion (request or retention period expiration) are logged into an audit trail, and the administrator is notified prior to the deletion. In fact, a SHA-2 hash of the digital file is calculated and stored when the original is uploaded (some models actually do this on the camera after recording) and displayed in the evidence audit trail. A comparison of the SHA-2 hash of the copy you have versus the SHA-2 hash on the evidence audit trail (which the agency has access to) would prove whether the copy is identical to the original.

Manska also moved to suppress evidence obtained as a result of the traffic stop, and a suppression hearing was held several months after the district court denied Manska's motion seeking the audit trail. At the hearing, the arresting officer testified about how the dash camera system works. He testified that dash cameras automatically activate when an officer turns on the squad car's emergency lights. The officer explained that when dash cameras are automatically activated, they capture video footage of the 30 seconds prior to activation but without audio (the silent rollback period). The district court denied Manska's motion to suppress evidence, concluding that there was a proper basis for the traffic stop.[4] At trial, the jury found Manska guilty of all five charges. Manska appealed.

On appeal, the court of appeals concluded that the district court did not abuse its discretion by denying Manska's motion to compel discovery of the dash camera audit trail, finding that

> the district court's decision shows that it denied Manska's motion to compel the audit-trail evidence because Manska did not provide a factual basis for concluding that the dash-camera video may have been altered and therefore did not show how the audit-trail evidence "may relate to his guilt or innocence," as required by rule 9.01, subdivision 2(3), and *Underdahl*.[5]

*State v. Manska*, No. A23-0010, 2024 WL 911970, at *6 (Minn. App. Mar. 4, 2024). The court of appeals determined that the exhibits Manska submitted in support of his motion did not "show that there is a reasonable basis for concluding that the dash-camera video

---

[4]     In the court of appeals, Manska also challenged the district court's denial of his suppression motion. We granted review solely on the issue of the evidence sought under Rule 9.01, and therefore the suppression issue is not before us.

[5]     In *State v. Underdahl*, 767 N.W.2d 677 (Minn. 2009), we considered what constitutes an adequate showing under Rule 9.01, subd. 2(3).

was capable of being altered" but instead showed "that the dash-camera video-recording system 'does not allow an officer to modify or delete video footage in any way.' "[6] *Id.* at \*7 (quoting the email from the Axon engineer). The court of appeals then concluded that Manska did not demonstrate how the audit-trail evidence would be "material and favorable" to Manska's defense. *Id.* Accordingly, the court of appeals affirmed. *Id.* at \*10.

We granted review on the sole issue of whether the lower courts erred by requiring Manska to prove that the audit trail evidence he sought under Rule 9.01, subd. 2(3), was "material and favorable" to his case, rather than just related to his guilt or innocence.

## ANALYSIS

The issue in this case is whether discovery motions in criminal cases under Minn. R. Crim. P. 9.01, subd. 2(3), require a defendant to make a showing that the evidence sought will be "material and favorable." "A district court judge has wide discretion to issue discovery orders, and normally an order will not be overturned without clear abuse of that discretion." *State v. Underdahl*, 767 N.W.2d 677, 684 (Minn. 2009) (citation omitted) (internal quotation marks omitted). To find an abuse of discretion, we "must conclude that the district court erred by making findings unsupported by the evidence or by improperly applying the law." *Id.* Here, Manska's claim is based on the interpretation of Rule 9.01,

---

[6] The court of appeals also rejected Manska's tampering argument that was based on the officer's testimony at the suppression hearing, noting that the district court did not have this evidence when it ruled on Manska's motion eight months before the suppression hearing, and that Manska had forfeited this argument by failing to raise it at the relevant omnibus hearing.

subd. 2(3). "Construction of a rule of procedure is a question of law subject to *de novo* review." *State v. Nerz*, 587 N.W.2d 23, 24–25 (Minn. 1998). To resolve this question, we first consider whether we have previously adopted the "material and favorable" standard for non-confidential discovery motions, then whether the lower courts erred in their interpretation and application of the rule, and finally whether Manska is entitled to any relief.

A.

The criminal rules broadly require the prosecution to disclose "all matters within the prosecutor's possession or control that relate to the case" without a court order. Minn. R. Crim. P. 9.01, subd. 1. Other types of discovery are discretionary, however, and require a court order. Minn. R. Crim. P. 9.01, subd. 2. For this disclosure of discretionary material, the rules provide:

> On the defendant's motion, the trial court at any time before trial may, in its discretion, require the prosecutor to disclose to defense counsel and to permit the inspection, reproduction, or testing of any relevant material and information not subject to disclosure without order of court under Rule 9.01, subd. 1, provided, however, a showing is made that the information *may relate to the guilt or innocence of the defendant* or negate guilt or reduce the culpability of the defendant as to the offense charged.

Minn. R. Crim. P. 9.01, subd. 2(3) (emphasis added).

The phrase "material and favorable" is not used in the Rule itself. Instead, the argument that we previously incorporated the "material and favorable" standard into the Rule is based on our opinion in *State v. Underdahl*, where we discussed the showing required under Rule 9.01, subd. 2(3). 767 N.W.2d at 677. We acknowledged in *Underdahl* that we had "not previously stated what showing is required to support a district court's

7

conclusion that information may relate to a defendant's guilt or innocence in a DWI case."

*Id.* at 684. We went on to say:

> But we have described that showing in cases where the defendant has requested to review *confidential* information. In those cases, we have required "some plausible showing that the information sought would be both material and favorable to his defense." *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (citation omitted) (internal quotation marks omitted); *accord State v. Evans*, 756 N.W.2d 854, 872–73 (Minn. 2008). In *Hummel*, we overturned the district court's discovery order of a confidential file because the defense offered no theories on how the file "could be related to the defense or why the file was reasonably likely to contain information related to the case." 483 N.W.2d at 72.

*Id.* at 684–85 (emphasis added). Because *Underdahl* referenced our earlier decision in *State v. Hummel*, 483 N.W.2d at 72, which articulates the "material and favorable" standard for discovery of *confidential* information, a threshold question in this appeal is whether in *Underdahl* we adopted the "material and favorable" standard from *Hummel* for Rule 9.01, subd. 2(3), discovery motions for *non-confidential* information. Manska argues that the lower courts erred by applying this higher standard that applies to disclosure of confidential information, while the State contends that the lower courts were correct to require Manska to make a plausible showing that the information sought would be "material and favorable" to his defense.

We conclude that *Underdahl* did not adopt the "material and favorable" standard. First, the "material and favorable" standard applies to an entirely different context—confidential records—and does not apply to non-confidential information, such as a dash camera audit trail. The defendant in *Hummel* sought disclosure of the victim's confidential psychiatric records. 483 N.W.2d at 70. As such, *Hummel* relied on the "material and

8

favorable" test articulated in *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987), which applies to cases where a defendant has sought to compel discovery of confidential information.

Additionally, aside from *Underdahl*'s single reference to *Hummel*, we did not explicitly or implicitly apply the "material and favorable" standard in our analysis. *Underdahl* addressed two related driving while intoxicated appeals in which defendants Underdahl and Brunner each obtained district court orders requiring disclosure of the computer source code for a breath-testing device. 767 N.W.2d at 679, 684–85. In each case, the district court concluded that the information the defendant sought was relevant and discoverable under Minn. R. Crim. P. 9.01, subd. 2. *Id.* at 684. We concluded that Underdahl's showing was inadequate under Rule 9.01, but that Brunner's was sufficient. *Id.* at 685–86. We stated that Underdahl "made no threshold evidentiary showing whatsoever" and "failed to demonstrate" how the information sought " 'could be related to [his] defense.' " *Id.* at 685 (citing *Hummel*, 483 N.W.2d at 72). On the other hand, Brunner submitted exhibits that "show[ed] that an analysis of the source code may reveal deficiencies that could challenge the reliability of the Intoxilyzer and, in turn, would relate to Brunner's guilt or innocence." *Id.* at 686. The language we used in our analysis was "related to the defense," "reasonably likely to contain information related to the case," and "relevant and related to . . . guilt or innocence." *Id.* at 685. Critically, we also concluded that we were not applying the higher "material and favorable" standard: "We hold that, even under a lenient showing requirement, Underdahl failed to make a showing that the source code may relate to his guilt or innocence." *Id.* at 685–86. In other words, in

*Underdahl* we applied the plain language of Rule 9.01 ("may relate to the guilt or innocence of the defendant") to the showing Brunner and Underdahl each made. Accordingly, we conclude that we did not adopt the "material and favorable" standard in *Underdahl* for Rule 9.01, subd. 2(3), discovery motions.[7]

B.

We now consider whether the lower courts erred by applying the wrong standard. We conclude that the court of appeals erred because it adopted the "material and favorable" standard for a Rule 9.01, subd. 2(3), discovery motion. Misreading our decision in *Underdahl*, the court of appeals held that "[t]o show that requested evidence may relate to a defendant's guilt or innocence, the defendant must make 'some plausible showing that the information sought would be both material and favorable to [the] defense.' " *Manska*, 2024 WL 911970, at *5 (second alteration by court of appeals) (quoting *Underdahl*, 767 N.W.2d at 684 (quoting *Hummel*, 483 N.W.2d at 72)). The court of appeals also determined that Manska's exhibits supporting his motion to compel did not "explain how the audit-trail evidence would be 'material and favorable' to Manska's defense." *Id.* at *7 (citing *Underdahl*, 767 N.W.2d at 684). Because it explicitly adopted the "material and favorable" standard and applied it to the non-confidential dash camera audit trail, the court of appeals erred.

---

[7]     We also note that we have never applied the "material and favorable" standard to disclosure of non-privileged, non-confidential information, and none of our cases citing *Underdahl* use the phrase "material and favorable."

The district court did not use the phrase "material and favorable," nor did it cite *Hummel* or *Underdahl*. But the district court concluded that Manska was not entitled to the audit trail because he "provided no evidence in support of his claims that the DVDs have been altered, and the Court does not find this claim to be credible." Notably, the district court did not apply the standard of whether the audit trail "may relate" to Manska's guilt or innocence, focusing instead on whether Manska had provided evidence to support his claims that the DVDs had been altered. Accordingly, we conclude that the district court also applied the incorrect standard.

C.

Finally, we address whether Manska is entitled to relief and, if so, the appropriate remedy.

1.

We first must consider whether, had the lower courts applied the correct standard, Manska made an adequate showing. Manska argues that he made the requisite showing because the audit trail could reveal discrepancies that would challenge the reliability of the dash camera video or the credibility of the arresting officer. Such a showing would in turn relate to his guilt or innocence. Manska further claims that he made a significantly stronger showing than either defendant in *Underdahl* for three reasons. First, he argues that his claim that the officer deleted a critical portion of the dash camera video is supported by the missing 30-second silent rollback period in the footage.[8] Second, the audit trail is the only

---

[8]    The State argues that Manska forfeited his claim about the missing rollback period. Likewise, the court of appeals did not consider this argument because it is based on

11

method to determine whether any footage was deleted. Third, the dash camera company engineer stated that a comparison of the data from the footage he received to the data from the audit trail would prove whether the copy is identical to the original.

Although the State and lower courts disagree with Manska's characterization of the exhibits, the engineer stated that a comparison of data from the copy to the audit trail would establish whether the copy is identical to the original. The fact that such a discrepancy is possible suggests that tampering or alteration of the dash camera footage can occur.[9] And if an officer did tamper with the dash camera footage, Manska could use this information to discredit the officer, the primary witness against him. In this way, the audit trail would relate to Manska's guilt or innocence. Under the plain meaning of Rule 9.01, Manska made an adequate showing that the dash camera audit trail may relate to his guilt or innocence.

Once this adequate showing is made by the defendant, Rule 9.01, subd. 2(3), provides that the district court "may, in its discretion, require the prosecutor" to disclose the material at issue. We further conclude that, under the specific facts of this case—where

---

evidence that was not before the district court at the time it issued its order on Manska's discovery motion; the information about the 30-second silent rollback is from testimony at the later suppression hearing. *Manska*, 2024 WL 911970, at *7. Manska notes, however, that without transcripts of the two omnibus hearings, it is not possible to conclude that Manska did not previously raise this argument in court. We agree with Manska. Manska did not forfeit this claim because he consistently maintained that the footage had been tampered with, even if he did not specifically base his argument on the missing silent rollback period. Furthermore, the supplemental authority the State submitted is inapposite; none of the cases support the claim that a defendant forfeits an argument when—through no fault of his own—there is no transcript of the district court proceedings.

[9] At this stage of the analysis, Manska is not required to prove his tampering or alteration theory, and we expressly take no position on the validity or merits of such claims.

12

Manska not only made this adequate showing but also where the 30-second silent rollback period in the dash camera footage is missing—it would be an abuse of discretion not to require production of the audit trail to Manska.

2.

We now consider the appropriate remedy. The State asks us to affirm, arguing that any error was harmless because, given the strength of the evidence, the jury's verdict was unattributable to the district court's denial of Manska's demand for the audit trail. Manska argues, however, that if the audit trail shows that the officer tampered with the dash camera video, Manska would have impeached the officer's credibility at the suppression hearing, and Manska could have prevailed on his suppression motion.

Remedies "should be appropriate to the violation, and a retrial is not required if a remand will remedy the violation." *State v. Bobo*, 770 N.W.2d 129, 139 (Minn. 2009). We may also give specific instructions on remand. *See, e.g.*, *State v. Bell*, 993 N.W.2d 418, 428–29 (Minn. 2023) (providing the district court with detailed instructions on remand). Here, Manska is entitled to the audit trail. Until the audit trail is disclosed, it is unclear whether the district court's error was harmless.[10] As such, the remedy on remand is dependent on the contents of the audit trail. On remand, if the audit trail shows tampering with the dash camera video footage, then Manska is entitled to a new suppression hearing. If the evidence shows no tampering, then the conviction should stand.

---

[10]    We note that Rule 9.01, subd. 2(3), provides that "[i]f the motion is denied, the court upon application of the defendant must inspect and preserve any relevant material and information." Here, Manska did not ask the court to do so.

13

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for proceedings consistent with this opinion.

Reversed and remanded.

GAÏTAS, J., took no part in the consideration or decision of this case.



# Device Audit Trail Information

**Coming soon** This article describes the feature as it will be when the December 2024 release occurs. In the meantime, some options or navigation might appear slightly different.

All Axon and TASER device audit trails show events and changes for the selected device. The audit information can be filtered to a particular date range or show the entire life of the device.

The audit information is available in both PDF and comma-separated values (CSV) format, with each event, action, or change shown on a different line in the audit trail.

- **The PDF file has four columns**: Item, Date/Time, Event, and Additional Information.

  - The **Item** column is a numerical listing of the events, actions, or changes for this file, and the item number changes depending on the selected date range for the audit trail.

  - The **Event** column has a short description of the event, action, or change.

  - The **Additional Information** column has general camera status information such as remaining battery percentage, video count, MB remaining, and firmware version.

- **The CSV file has seven columns**: Date Time, Action, Battery Percentage, Video Count, Firmware Version, MB Remaining, and Unique ID.

  - The **Action** column has a short description of the event, action, or change and corresponds to the PDF Event column.

  - The **Battery Percentage**, **Video Count**, **Firmware Version**, and **MB Remaining** columns have camera status information and correspond to the information shown in the PDF Additional Information column.

  - The **Evidence UID** column is a unique string generated for all pieces of evidence on Evidence.com.

Axon, the Delta Logo, TASER, the TASER Lightning Bolt Logos, and other capitalized brand names are trademarks of Axon Enterprise, Inc., some of which are registered in the US and other countries. For more information, visit www.axon.com/trademarks. All other trademarks are property of their respective owners. All rights reserved. © 2024 Axon Enterprise, Inc.

Watch this [video](video) to learn how to view the Axon Evidence audit trail.

## Events and Changes in the Audit Trail

The following events and changes appear in the audit trail for all devices:

- Device registration
- Device status changes
- Device assignment information
- Device metadata changes

## Additional Events for Axon Body 2 and Flex 2 Cameras

**Note:** For Axon Body 2 and Flex 2 cameras with v1.7 or earlier firmware release, only the camera registration, status change, and assignment information are available. The other events listed are available with the v1.8 or later firmware release for Axon Body 2 and Flex 2 cameras.

- Camera registered
- Camera status change
- Power on or off
- Event button press or hold
- Recording start or end
- Audio recording disabled or enabled
- Camera docked or undocked
- Video accessed or streamed using Axon View or Evidence Sync
- Category updated using Axon View or Evidence Sync
- ID updated using Axon View or Evidence Sync
- Title updated using Axon View or Evidence Sync
- Function button press or hold
- Battery status button press or hold
- Volume mute, low, medium, or high
- Stealth mode enabled or disabled

- Indicator lights enabled or disabled

- Marker added

- GPS coordinates added

- Date/Time Sync

- Camera assignment

- Firmware updated

## Get a Device Audit Trail

1. On the menu bar, select **Inventory**.

2. Search for the device you want to view.

3. In the device search results, select the device **Serial No.**

    The Device Summary page is shown.

4. Choose **Audit Trail**.

5. Select an **Audit Period**.

6. Choose **Run Audit**. The **Status** changes to **Running**. When the audit trail report is ready, the **Status** will change to **Download**.

7. Select **Download**. Axon Evidence opens or downloads a PDF for the evidence audit trail. The exact behavior depends on the browser you use and its download settings for PDF files.

**Last modified** - 28 February 2025